UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
J & J SPORTS PRODUCTIONS, INC.,

                          Plaintiff,                             **MEMORANDUM & ORDER**
                                                                           17-CV-1190 (MKB) (ST)

                v.

MAR Y LAS ESTRELLAS RESTAURANT CORP
d/b/a IVETTES, and NANCY V. DE PEREIRA,

                          Defendants.
-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff J & J Sports Productions, Inc. commenced the above-captioned action on March 2, 2017, against Defendants Mar Y Las Estrellas Restaurant Corp., doing business as Ivettes ("Mar Y Las Estrellas"), and Nancy V. De Pereira, pursuant to the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 ("FCA"), alleging unlawful interception and broadcast of the March 8, 2014 Light Middleweight Championship Fight Program between Saul Alvarez and Alfredo Angulo. (Compl. ¶¶ 7–63, Docket Entry No. 1.) On August 8, 2017, Plaintiff filed a request for a certificate of default after Defendants failed to appear, answer, or otherwise respond to the Complaint and Summons. (Request for Certificate of Default, Docket Entry No. 9.) The Clerk of Court noticed the default on August 9, 2017. (Clerk's Entry of Default, Docket Entry No. 10.) On September 8, 2017, Plaintiff moved for default judgment against Defendants, seeking statutory damages and enhanced damages totaling $13,061.85, plus interest, costs, and disbursements. (Pl. Mot. for Default. J. ("Pl. Mot."), Docket Entry No. 11; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 12.) On September 11, 2017, the Court referred Plaintiff's motion to Magistrate Judge Steven Tiscione for a report and

recommendation. (Order dated Sept. 11, 2017.)

By report and recommendation dated July 16, 2018, Judge Tiscione recommended that the Court grant the motion as to Defendant Mar Y Las Estrellas and enter an award in favor of Plaintiff in the amount of $1,670, but deny the motion as to Defendant De Pereira and dismiss the claims against her (the "R&R"). (R&R 1–2, Docket Entry No. 14.) On July 25, 2018, Plaintiff timely filed partial objections to the R&R. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 16.) For the reasons set forth below, the Court adopts the R&R in its entirety. Accordingly, the Court grants in part and denies in part Plaintiff's motion for default judgment.

I. **Background**

   a. **Factual background**

Plaintiff is a California corporation with its principal office and place of business located in Santa Clara, California. (Compl. ¶ 4.) Mar Y Las Estrellas is a New York corporation. (*Id.* ¶ 5.) De Pereira is an officer, director, and shareholder of Mar Y Las Estrellas. (*Id.* ¶ 5.) In addition, Mar Y Las Estrella's New York State liquor license lists De Pereira as a principal. (*Id.* ¶¶ 5, 16.)

Plaintiff entered into a license agreement to broadcast the closed-circuit telecast of the March 8, 2014 Light Middleweight Championship Fight Program between Alvarez and Angulo, including undercard and preliminary bouts (the "Event"). (*Id.* ¶ 7.) Under the license agreement, Plaintiff maintained the exclusive right to broadcast and sublicense the rights to the marketing and sales of the Event. (*Id.* ¶ 9.) Transmission of the Event required special decoding equipment only available by contract with Plaintiff or Plaintiff's sub-licensee, G & G Closed Circuit Events, LLC ("G & G"). (*Id.* ¶¶ 13–14.) Defendants did not obtain the rights to broadcast the Event from Plaintiff or G & G. (*Id.* ¶ 13.)

On March 8, 2014, at 10:23 PM, Kenneth S. Baylor, Plaintiff's investigator, entered Mar Y Las Estrellas without paying a cover fee. (Aff. of Kenneth S. Baylor ("Baylor Aff.") 1–2, annexed to Pl. Mem. as Ex. A, Docket Entry No. 12-1.) Inside Mar Y Las Estrellas, Baylor observed the Event being broadcasted on two televisions and through a projector onto a wall. (*Id.* at 1.) Up to twenty-one patrons were inside Mar Y Las Estrellas at any given time.[1] (*Id.* at 2.)

Plaintiff contends that the Event was broadcasted without authorization and in violation of the FCA. (Compl. ¶¶ 15–17.) Plaintiff also contends that the Event could not have been intercepted "mistakenly, innocently or accidentally." (Aff. of Joseph M. Gagliardi ("Gagliardi Aff.") ¶ 9, annexed to Pl. Mem. as Ex. C, Docket Entry No. 12-3.)

### b. Judge Tiscione's recommendations

Judge Tiscione recommended that the Court grant the motion for default judgment as to Mar Y Las Estrellas and enter an award for $1,670 because Mar Y Las Estrellas intercepted and divulged an unauthorized satellite communication of the Event in violation of Section 605(a) of the FCA. (R&R 7–8.) Judge Tiscione found that Mar Y Las Estrellas broadcasted the Event without authorization on two television screens and through a projector inside of the establishment, and there was no contract or sublicense between Plaintiff and Defendants. (*Id.* at 7.)

In addition, Judge Tiscione recommended that the Court deny the motion for default judgment as to De Pereira and dismiss the claims against her because Plaintiff failed to establish

---

[1] Baylor also observed that Mar Y Las Estrellas has a seating capacity of approximately eighty people. (Aff. of Kenneth S. Baylor ("Baylor Aff.") 2, annexed to Pl. Mem. as Ex. A, Docket Entry No. 12-1.).) Inside is a jukebox, pool table, bar, two televisions, and a projector camera. (*Id.* at 1–2.)

that De Pereira was either contributorily liable or vicariously liable for the unauthorized broadcast. (*Id.* at 1–2, 8.) Judge Tiscione found that Plaintiff made no allegations in the Complaint that De Pereira was contributorily liable. (*Id.* at 8.) He also rejected the application of vicarious liability, finding the evidence insufficient to support the allegations that De Pereira had a direct financial interest or the right and ability to supervise the infringement. (*Id.* at 11.)

Judge Tiscione recommended that the Court award $1,200 in statutory damages against Mar Y Las Estrellas but deny Plaintiff's request for enhanced damages because Plaintiff failed to demonstrate that the facts warranted enhanced damages. (*Id.* at 13–14.) Judge Tiscione also recommended that the Court deny prejudgment interest because the FCA does not provide for it and Plaintiff failed to demonstrate that the facts warrant discretionary prejudgment interest. (*Id.* at 17.) Lastly, Judge Tiscione recommended that the Court award reasonable filing and service fees in the amount of $470. (*Id.* at 17–18.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error

standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, --- F. App'x ---, ---, 2018 WL 2277791, at *1 (2d Cir. May 18, 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

  ii. **Default judgment**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The entry of a default, while establishing liability, 'is not an admission of damages.'" *Id.* at 128 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true,

5

provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))). However, the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and therefore "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond," *LG Funding, LLC*, 2015 WL 4390453, at *2 (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

### b. Unopposed portions of the R&R

No party has objected to the recommendation that the Court grant default judgment against Mar Y Las Estrellas. Having reviewed that recommendation for clear error and finding none, the Court grants Plaintiff's motion for default judgment with respect to Mar Y Las Estrellas.

In addition, no party objected to the recommendation that the Court award costs and disbursement, but deny Plaintiff's request for pre-judgment interest. The Court has reviewed both recommendations for clear error. Finding no clear error, the Court awards Plaintiff $470 as recovery for the reasonable costs associated with filing and service, and denies Plaintiff's request for pre-judgment interest.

### c. Plaintiff's objections to the R&R

Plaintiff objects to Judge Tiscione's recommendation that the Court (1) deny default judgment against De Pereira and dismiss the claims against her, (2) award Plaintiff only $1,200 in statutory damages, and (3) deny enhanced damages.

#### i. Liability as to De Pereira

Plaintiff objects to Judge Tiscione's recommendation that the Court deny an entry of

default judgment against De Pereira and dismiss the claims against her. (Pl. Obj. 1.) Plaintiff seeks to hold De Pereira vicariously liable under Section 605 in her capacity as an officer, director, shareholder, and principal of Mar Y Las Estrellas.[2] (Compl. ¶¶ 5, 33, 49.) Plaintiff contends that De Pereira is vicariously liable because De Pereira "had a right and ability to supervise the interception [of the Event] and a strong financial interest in the interception [of the Event]." (Pl. Obj. at 3, 6.) Plaintiff further contends that De Pereira's listing as the principal on Mar Y Las Estrella's liquor license supports vicariously liability. (*Id.* at 5.)

The FCA regulates radio and cable wire transmissions. 47 U.S.C. § 151 *et seq*. Section 605(a) provides in relevant part that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . . contents of such intercepted communications to any person." 47 U.S.C. § 605(a). Section 553(a)(1) also provides that no "person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[3] *Id.* § 553(a)(1); *see also J & J Sports Productions, Inc. v. Crazy Willy's Bar, Lounge & Restaurant, Inc.*, No. 17-CV-1192, 2018 WL 3629595, at *3 (E.D.N.Y. July 31, 2018); *J & J Sports Prods., Inc. v. Monte Limar Sports Bar,*

---

[2] Plaintiff does not object to Judge Tiscione's conclusion that De Pereira is not contributorily liable. Instead, Plaintiff only objects to Judge Tiscione's recommendation that De Pereira is not vicariously liable. (Pl. Obj. 3–7.) Having reviewed Judge Tiscione's recommendation that De Pereira is not contributorily liable and finding no clear error, the Court finds that De Pereira is not contributorily liable.

[3] Plaintiff brings claims under both Sections 553 and 605 of the FCA. However, when conduct violates both provisions, "the court should award damages only under Section 605." *J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, 13-CV-6173, 2014 WL 4700014, at *2 (E.D.N.Y. Aug. 29, 2014), *R&R adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (citing cases). Because Plaintiff is entitled to damages under Section 605, the Court declines to address Plaintiff's claims under Section 553.

*Inc.*, No. 15-CV-3771, 2017 WL 933079, at *2 (E.D.N.Y. Mar. 8, 2017).

A plaintiff may seek damages for violations of Section 605 based on theories of "contributory infringement" or "vicarious liability." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997); *Crazy Willy's*, 2018 WL 3629595, at *3. Contributory infringement arises when a defendant authorizes the violations. *Softel*, 118 F.3d at 971. Vicarious liability attaches when the defendant had a "right and ability to supervise the infringing activities" and an "obvious and direct financial interest" in the infringing activities. *Id.* (alterations adopted) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)); *Crazy Willy's*, 2018 WL 3629595, at *3.

Plaintiff fails to provide sufficient evidence to recover under the theory of vicarious liability. The Complaint merely alleges the legal standard, claiming that De Pereira had "a right and ability to supervise the infringing activities" and "an obvious and direct financial interest" in the interception of the Event. (Compl. ¶ 5.) The Supreme Court has cautioned, however, that "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's only factual allegation about De Pereira is that she is specifically identified on the New York Liquor Authority License issued for the establishment. (Compl. ¶¶ 5, 16.) The Court cannot infer from this fact alone that De Pereira supervised or had a direct financial interest in the interception of the Event. *Monte Limar Sports Bar, Inc.*, 2017 WL 933079, at *3 (declining to find vicarious liability against defendant where plaintiff alleged only that defendant was listed as a principal on the establishment's liquor license and that defendant was an "officer, director, shareholder, and/or principal" of the establishment); *J & J Sports Prods. Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173, 2014 WL 4700014, at *4 (E.D.N.Y.

Aug. 29, 2014) (finding defendant's name on establishment's liquor license "does nothing to suggest either that [the defendant] had anything to do with the decision to display the [e]vent . . . or that [the defendant] had an obvious and direct financial interest in the exploitation of the [e]vent").

Even if the Court were to assume that De Pereira had a right and ability to supervise the Event, Plaintiff fails to show that De Pereira had an "obvious and direct financial interest" in the infringement. *See Crazy Willy's*, 2018 WL 3629595, at *3 (quoting *J & J Sports Prods., Inc. v. LX Food Grocery, Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016). Courts in this Circuit have found "direct or strong indirect evidence of financial gain from the unauthorized broadcast" to be sufficient to show an "obvious and direct financial interest." *Monte Limar Sports Bar, Inc.*, 2017 WL 933079, at *3 (citing *LX Food Grocery*, 2016 WL 6905946, at *3). Collecting a cover charge, for example, has been found to be sufficient evidence of direct financial gain. *LX Food Grocery*, 2016 WL 6905946, at *3; *see also J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at *5 (E.D.N.Y. Dec. 9, 2015) ($20 cover charge); *J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299, 2014 WL 4467774, at *2 (E.D.N.Y. Sept. 9, 2014) ($8 cover charge). "[A] large number of patrons, who would presumably purchase drinks during the broadcast," may constitute "strong indirect evidence of financial gain." *LX Food Grocery*, 2016 WL 6905946, at *3.

Plaintiff fails to provide sufficient evidence to establish De Pereira's "obvious and direct financial interest" in the unlawful broadcast of the Event. During the unauthorized broadcast of the Event, Plaintiff's investigator was not charged a cover or admissions fee to enter the establishment. (Baylor Aff. 1.) Nor did the investigator allege that any other patron was charged a cover or admissions fee. While inside the establishment, the investigator witnessed up to

twenty-one patrons inside. (*Id.*) Plaintiff's investigator purchased one Heineken Light for $8. (*Id.*) The investigator's affidavit contains no information as to whether this is the usual price for a Heineken Light or whether prices were increased because of the broadcast of the Event. The investigator's affidavit describes the establishment as having a pool table, jukebox, two televisions, and one projection camera. (*Id.* at 1–2.) These allegations are insufficient to show that De Pereira had an "obvious and direct financial interest." There is no indication as to whether patrons present for the broadcast were required or expected to make purchases, whether the volume of sales increased, how many of the patrons were actually watching the event, or how the number of patrons that night compared to the number of patrons on a typical night. *See J & J Sports Prods., Inc. v. J & O LLC*, No 17-CV-4180, 2018 WL 3991493, at *4 (E.D.N.Y. Aug. 21, 2018) (declining to impose vicariously liability on individual defendant despite approximately sixty patrons present at the establishment because there was no evidence that those patrons paid a cover charge or purchased drinks); *see also Crazy Willy's*, 2018 WL 3629595, at *4 (finding that plaintiff failed to establish individual defendant's "obvious and direct financial interest" since defendant did not collect a cover charge, only twenty-five patrons were present during the event, plaintiff did not allege that these patrons made any purchases, and plaintiff did not specify how the number of patrons during the [e]vent compares to the number of patrons on a typical night).

Accordingly, the Court finds that Plaintiff failed to establish that De Pereira is vicariously liable. Because Plaintiff has failed to plead a cause of action against De Pereira individually, the Court denies Plaintiff's motion for default judgment against De Pereira and dismisses the claims against her.

Plaintiff seeks leave to amend its Complaint if the Court agrees that, "due to perceived deficiencies in the Complaint," default judgment as to De Pereira is improper. (Pl. Obj. 2.)

10

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The "grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (holding "it is within the sound discretion of the district court to grant or deny leave to amend"). This is Plaintiff's first request for leave to amend its Complaint. Thus, the Court grants Plaintiff leave to amend the Complaint against De Pereira. The amended complaint must include additional factual allegations that would establish De Pereira's right and ability to supervise the Event as well as De Pereira's obvious and direct financial interest in the unlawful broadcast of the Event. Plaintiff must file an amended complaint within thirty (30) days of this Memorandum and Order. If Plaintiff fails to do so, the claims against De Pereira will be dismissed.

### ii. Damages

Having established liability with respect to Mar Y Las Estrellas, Plaintiff is entitled to damages.

Even upon default, courts are required to conduct an independent evidentiary determination to ascertain the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). An award of damages must be based on evidence that "provide[s] a sufficient basis from which to evaluate the fairness of the proposed sum." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The court must ascertain the amount of damages "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (providing that a court may rely on affidavits and documentary evidence when evaluating a proposed damages award).

1. **Statutory Damages**

Plaintiff seeks $1,153.95 based on the number of patrons at the establishment[4] in addition to $1,200 for the amount the establishment would have had to pay to show the Event legally. Plaintiff contends that the correct amount of statutory damages is $2,353.95.[5] (Pl. Obj. 8.)

Under Section 605, an aggrieved party may elect to recover either statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). If a plaintiff elects to recover statutory damages, the plaintiff may recover, per violation, "in a sum of not less than $1,000 or more than $10,000, as the court considers just." *Id.* § 605(e)(3)(C)(i)(II); *Time Warner Cable of N.Y.C. v. Sanchez*, No. 02-CV-5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003) (noting that the amount of statutory damages under Section 605 are within the sound discretion of the court).

Courts in this Circuit typically award statutory damages based on one of two methodologies: the "flat fee" method or "per-person" method. *LX Food Grocery Inc.*, 2016 WL 6905946, at *4 (citing *McAdam*, 2015 WL 8483362, at *4). Under the "flat-fee" method, the court calculates the amount of damages based on the amount of the licensing fee defendants would have had to pay to legally show the specific event at issue. *Id.* Under the "per-person" method, the court calculates damages based on the number of consumers who watched the unauthorized transmittal of the event, multiplied by the amount a residential consumer would have paid to watch the event pay-per-view. *Id.* Upon calculating damages under both methods,

---

[4] Plaintiff's calculation under the "per-person" method is based on the maximum number of patrons the investigator observed (twenty-one) multiplied by $54.95, the alleged amount a residential consumer would have paid to watch the Event at home legally. (Pl. Mem. 9–10.)

[5] Plaintiff did not object to Judge Tiscione's recommendation that the Court deny Plaintiff's request for $2,000 in lost goodwill, reputation, and future revenue. (R&R at 13.) Accordingly, having reviewed Judge Tiscione's recommendation and finding no clear error, the Court adopts the recommendation and denies Plaintiff's request for $2,000 in lost goodwill, reputation, and future revenue.

courts grant the higher of the two amounts. *Id.*

Here, the "flat-fee" method yields a greater damages award. Under the "flat-fee" calculation method, because Mar Y Las Estrellas seats approximately eighty people, (Baylor Aff. 1), it would have had to pay $1,200 to legally broadcast the Event. (*See* Advertisement annexed to Gagliardi Aff. as Ex. 1, Docket Entry No. 12-3 (providing for a cost of $1,200 for establishments with a seating capacity of less than 100 people to broadcast the Event).) Under the "per-person" calculation method, Plaintiff would recover $1,153.95.[6]

Thus, Plaintiff is entitled to a statutory damages award of $1,200 for Mar Y Las Estrella's single violation of Section 605.

### 2. Enhanced Damages

Plaintiff seeks enhanced damages based on Mar Y Las Estrella's alleged willful conduct. (*See* Compl. ¶¶ 15, 39.)

In addition to statutory damages, Section 605 provides courts with the discretion to increase the award of damages upon a finding that a violation of the Act was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Upon a finding of willfulness, courts consider several factors in determining whether willful conduct justifies an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii)

---

[6] The Court is not convinced that Plaintiff provides sufficient evidence to sustain an award of $1,153.95 based on a "per-person" licensing fee. (R&R at 13.) Plaintiff relies on a line of cases applying $54.95 as the per-person cost for cable access. *See, e.g.*, *J & J Sports Prods., Inc. v. Shots Pool Hall, Inc.*, No. 16-CV-5067, 2018 WL 1115915, at *3 (E.D.N.Y. Feb. 6, 2018) (collecting cases), *R&R adopted*, 2018 WL 1116551 (E.D.N.Y. Feb. 27, 2018). However, because the "flat-fee" method yields a greater damages award, the Court declines to decide whether the cases Plaintiff cites provide a sufficient basis from which the Court can calculate damages with reasonable certainty.

13

substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Monte Limar Sports Bar Inc.*, 2017 WL 933079, at *5 (citing *Big Daddy's Theme Palace, Inc.*, 2015 WL 58606, at *5).

Assuming, without deciding, that Mar Y Las Estrellas acted willfully,[7] the Court finds that Plaintiff is nevertheless not entitled to enhanced damages. Plaintiff fails to set forth facts supporting any of the enumerated factors. Plaintiff makes no allegations of repeated violations by Mar Y Las Estrellas Restaurant and Plaintiff did not suffer significant actual damages. By Plaintiff's own admissions, Plaintiff's actual damages calculations did not amount to more than $2,353.95, which includes the licensing fee and the number of patrons present multiplied by the Plaintiff's proposed, and unsupported, individual consumer fee for the Event. (Pl. Mem. 10.) In addition, Plaintiff has provided no evidence of substantial unlawful monetary gains by Mar Y Las Estrellas, and admits that Mar Y Las Estrellas did not charge a cover or admissions fee on the night of the Event. (Baylor Aff. 1.) There is no evidence that Mar y Las Estrellas advertised the Event or that the restaurant charged premium prices on food or drinks on the night of the

---

[7] Some courts in this Circuit have determined that the act of intercepting and broadcasting a televised event without permission constitutes willful conduct. *See Garden City Boxing Club, Inc. v. Polanco*, No. 05-CV-3411, 2006 WL 305458, at * 5 (S.D.N.Y. Feb. 7, 2006), *aff'd*, 228 F. App'x 29, 30–31 (2d Cir. 2007); *see also J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015) ("Plaintiff correctly notes that the intercepting and broadcasting of the event, without authorization, is a deliberate act, and therefore establishes willfulness."); *J & J Sports Prods., Inc. v. Guzman*, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008); *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F .Supp. 2d 485, 490 (S.D.N.Y. 1999) (noting that "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems")).

Event.[8]

Even if the Court were to disregard the factors, the facts of this case do not warrant enhanced damages. *LX Food Grocery Inc.*, 2016 WL 6905946, at *5 ("Even if [p]laintiff is correct, such rarity would merely underscore that discretionary enhanced damages should be reserved for particularly severe cases, where the defendant's conduct so departs from the norm that standard statutory damages are inadequate.") Plaintiff alleges only a single violation. The establishment is described as having three televisions (thirty-two inches in size), one projection camera, a juke box, a bar area, and a pool table. (Baylor Aff. 1–2.) Mar Y Las Estrellas appears to be a small business for which statutory damages will provide a sufficient penalty.

Having failed to provide sufficient evidence that would justify enhanced damages, the Court finds that an award of statutory damages in the amount of $1,200 against Mar Y Las Estrellas sufficient for the single violation alleged in the Complaint.

---

[8] Plaintiff's investigator states that he was charged $8 for a Heineken Light. (Baylor Aff. 1.) However, there are no allegations that this price was greater than usual due to the illegal showing of the Event.

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Tiscione's R&R in its entirety and grants in part and denies in part Plaintiff's motion for default judgment without prejudice. The Court grants the motion for default judgment with respect to Defendant Mar Y Las Estrellas' liability, and finds that Plaintiff is entitled to $1,200 in statutory damages and $470 in costs, totaling $1,670. As to Defendant De Pereira, the Court denies the motion for default judgment and dismisses the claims against her. The Court grants Plaintiff leave to file an amended complaint as to Defendant De Pereira within thirty (30) days of the entry of this Memorandum and Order in accordance with the Court's foregoing instructions.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 25, 2018
       Brooklyn, New York